Sutherland, J.
It appears, from the testimony of Joseph Morgan, that Hannah Martin (then Hannah Chapman, one of the lessors, and the mother of the others, who are admitted to be her heirs at law,) lived upon the premises in question, or a part of them, as early as 1789 ; and continued to reside there until 1793 or 4, when she removed to Canada, for fear of an Indian war. She held, as she alleged, by virtue of a deed from Oliver Phelps. The deed from him to her bears date the 13th day of September, 1790; and if the description, by its terms, includes the premises in question, or if, the terms being doubtful, there has been a practical location under it, which has been acquiesced in from that time to the present, then here can be no question of the plaintiff’s right to recover.
The defendant exhibited no paper title; but relied sole *274 ly upon a possession of ten or twelve years. It was proved that he had admitted that the premises in question, called the Dugan farm, were the same which Hannah Chapman formerly possessed, as he had always understood, taining, as possessed by her, about one hundred and fifty acres.
The only difficulty in the case, arises from the description of the premises in Phelps’ deed. It conveys to Hannah Chapman, her heirs and assigns, “one hundred and fifty acres of land, being and lying in township Ho. 1 west of Genessee river, (south-east corner of said town, beginning two miles north of Canawagus, and bounding on the said river,) to be in common and undivided.”
*1 am inclined to think the construction of this grant, contended for by the plaintiff’s counsel, is the true one; that the descriptive part of the deed was intended to apply to the land conveyed, and not to the town in which that land was situated; that the words, south-east corner of said town, must be considered as a location of the land, and are to be read in connection with the previous description, and not as the commencement of a new member of the sentence. The grantor conveyed 150 acres of land, being and lying in township Ho. 1, west of Genesee river, (in) the south-east corner of said town, beginning two miles north of Canawagus, and bounding on the said river. Beginning and bounding must refer to the same antecedent; and if that antecedent be the 150 acres of land, then they are used in their natural and appropriate sense. But it certainly is not strictly accurate to say that a corner begins at a certain place, and. bounds upon a river. A corner is a point. It has no extension. A town or farm begins at a certain place, but a corner of a town or farm is at such a place. So a town or farm may bound upon a river; but the corner of such town or farm is upon the river. These are minute criticisms, and would be entitled to very little consideration, were there any thing in the deed clearly to indicate the intention of the parties. But where that intention is left in doubt, and the construction of the instrument is essentially varied, by a trifling change even in the pune *275 tnation, these criticisms, though verbal, may be entitled to some weight:
_ It is diffidult to understand what was meant by thé téfmá „ cdIjjnion aD¿[ undivided.” The tdwnships, at that time, were probably not subdivided into lots; and it may have been the intention of the grantor only to reserve the right of rtinning the 150 acres conveyed to the grantee, into a lot, when he came to divide the township ; so as td preserve uniformity in the subdivisions. But if the lot was to be located in the south-east corner of the town, as-1 think, according to the fair construction of the deed, it whs, then the possession taken and held by the grantee, must, under the circumstances of the ease, be considered a '^location by the consent Of the grantor. There can be little question, that, in fact, the deed was intended to cover the land which the grantee was in possession of when the deed was given, and had been for soine time before.
The covenants in the deed show that the consideration was not nominal merely ; that it was á sale and purchase of a farm in the ordinary manner. And it appears, from the deed itself, that Phelps resided at Canandaigua, at no very remote distance froto thé premises in question; and it may fairly be intended that he kn’éw of the location, and that it was made with his approbation, since it does not appear ever to have been questioned by him, or his representatives.
Whether the premises in question were in the south-east corner of the town, was left fo the jury tó decide as a question of fact.
Jesse Hawley testified, that the south east corner of the town might be at two different points, owing to the particular course and bend of the river; and, from the diagram exhibited by him, it appears that the Dugan farm (the premises in question) is in the extreme eastern point, though not quite at the southern extremity of the town; there, being another farm lying along the southern line. The jury found the location to be in conformity with the deed; and I perceive no sufficient ground for interfering *276 with their verdict on this point. If the location be correct, then the lessors were clearly entitled to recover.
hfor is there any ground for granting a new trial, upon the affidavits of surprise or newly discovered evidence. The promise of Mr. Lee to write to his client, did not impose upon him the obligation to suspend all proceedings in the case, until he received an answer, and communicated it to Mr. Wadsworth. Mr. Lee swears expressly, that there was no such agreement on his part; and Mr. Wads-worth does not pretend there was, unless it was implied in the promise of Mr. Lee to write to his client, and communicate to him Mr. Wadsworth’s proposition. Mr. Lee further swears, that he did not know of the absence of Mr. Wadsworth, when the cause was noticed for "“"trial, nor until he came to the circuit; and that Mr. Wadsworth’s counsel then said they were as well prepared at that time as they ever should be. There is nothing now disclosed to induce us to suppose that Mr. Wadsworth has any material evidence or defence which was not produced on the former trial, except the general affidavit of merits. The newly discovered witness denies all knowledge of any conveyance from Mrs. Chapman to her son, which is the newly discovered evidence relied upon.
The motion for a new trial must be denied.
Hew trial denied,